Thank you, Your Honor. May it please the Court, I am George Crook. I'm going to argue this case for the appellants. Also with me at counsel's table is Henry Tovmasian, another of appellants' counsel. And if the Court will allow, I'm going to start my remarks this morning with a review of what I think should be this Court's standard of review in looking at this case. And I think that standard should be de novo. I think this is a classic case calling for de novo review. Let me give examples. The question of whether an IEP constitutes a FAPE for a child is classically in this circuit. Review de novo is a mixed question of fact and law in which the questions of fact do not predominate. Amanda J. stands for that. Gregory K. stands for that. Shapiro stands for that. Same rule applies with questions with respect to place of placement of a child at a particular school. County of San Diego v. California State Education Hearing Office stands for that proposition. The general rule in Federal court, of course, as this Court well knows, is that a court of appeals applies de novo review with respect to questions requiring the application of a statute, and here we have a Federal statute, to a set of facts. The facts in this case, there's a lot of debate, there's a lot of argument about what they may mean, there's a lot of argument about what the law might be, but there's not a lot of argument about what the facts are. There is not. The Court, the district court, and I quote, The facts set forth in the administrative record are largely undisputed. That's at page 1800, lines 9 and 10 of the record from counsel's brief. The facts set forth in the administrative record were largely undisputed, concedes the school district, except to the extent that there was considerable dispute about the nature and severity of students' emotional problems. That dispute, I maintain, is not factual. It's interpretive. What does it mean? What's it all about? What are the consequences of these undisputed facts? I have not been able to find any Ninth Circuit cases applying a standard of review to questions of IDEA eligibility, but I've cited to the court in the brief two of them from the Second Circuit, Mueller v. Committee on Special Education and J.D. v. Powlett School District. Now, a corollary of that is that there are two issues in this case, and I'm not going to go into that. The first one is, as I see it, was the student eligible for emotional disturbance, and then, secondly, whether the IEP team complied with the law as of the key date? I agree. Now, the first one, the eligibility, are you speaking to that one now? I'm speaking to both, but I am going to segue into that. Okay. Is that what Your Honor would like me to address next? I can easily ---- Well, I just want to be sure. I'll get there. All right. Go ahead. I won't interrupt you. Well, feel free to, but I'll meander to that point, Trustee Kennedy. All right. A corollary of what I'm saying is that reviewing this record de novo, this Court then itself may determine how much deference it will give to the administrative decision. OHI stands for that, 4-Fed 3rd at 1473, Gregory K. at 11-Fed 2nd at 1314. So we have de novo review. We have this Court determining how much deference to give the decision. It's one of the peculiarities of the IDEA, I think, that in this situation previous decisions sort of fall away. There is a case, Union School District v. Smith. The Court gives more deference when the hearing officer's findings are thorough and careful. These are not. They're utterly uncareful. They are woefully ‑‑ we went through this in the brief in some detail, and I could go into it, but this hearing officer, Your Honor, this administrative decision, the hearing officer makes up rules as she goes along, rules, I mean, of evidence, rules of psychology. For example, for example, gee, Dr. Solomon did not go observe this child in school, and therefore Dr. Solomon's testimony that this child would be suffering from a severe emotional disturbance is entitled to no weight because she didn't see the child in school. Yet, she's a clinical psychologist, she works with children with a similar background to this child, she knows reactive attachment disorder, she knows posttraumatic stress syndrome, she knows what happens to children who are born with fetal alcohol syndrome and as a result of maternal drug abuse, and she testified to the trajectory this child would be on. I mean, imagine if one of our sons came back from Iraq or Afghanistan with posttraumatic stress disorder, and it somehow was an issue in some proceeding, and a psychologist was testifying, well, here is the pattern, X percent of soldiers who come back from Iraq come back with posttraumatic stress syndrome, and here's how it would manifest itself on the job, in the workplace. Well, doctor, have you gone to the workplace? Have you seen this former soldier in his office in a factory? Some things don't, that's just a, frankly, a cop out for an easy decision, if I may. It couldn't have mattered. The facts, again, are undisputed. Dr. Solomon's opinions about what the child has are relevant. Her opinions about how she got to be where she is are relevant. The record of her performance in school is not from Dr. Solomon. Aren't you first claiming that there was procedural error before we even get to the merits of the claim? I mean, don't we have to address that first? We do. Whether the IEP team was legally constituted, and then we talk about everything else? Okay. I mean, I just am wondering whether you're skipping over the procedural issue. Well, I certainly hope not, because I think they're significant, and if that's a hint that you're concerned that I might be, Your Honor, let me come to them. Well, I just, I think that, I mean, there's some concern on my part of whether the IEP team was duly constituted. Well, it wasn't. It wasn't even close to being duly constituted. The law at the time, we were dealing with the 1997 statute, and it was very clear that an IEP team has to be composed, among others, of the special education teacher of the child, the general education teacher of the child. There was a special education teacher on the, in the team, correct? I don't believe so, Your Honor. No. There was a former general education teacher on the team, and that was the former principal who had taught this child in kindergarten. Now we're in the sixth grade. But there was not a special education teacher on the team, as I recall the fact. Certainly not one of the child. The child at the time was at Intermountain. Intermountain is a special education school, by definition. She was receiving special education. It's certified to do such. It was obvious that it was doing so just from a review of the record. When one looks, this is the facts here are remarkably like those of the Shapiro case. They're remarkably like those in ML. They're remarkably like those in ML. They're remarkably like those in WG. The problem with ML is that there's not any clear, crisp statement of what that court decided. I think you kind of have to read each of the separate opinions before you can put it together. The way I sort of pieced it out, Your Honor, and I hope I was correct in this, is that as I understand it, it's in the briefs, that in a case such as this where you've got competing opinions, the judge who winds up holding all the cards is the one who concurs with the result on the narrowest possible ground. And there was a citation to, or I cited to a case of the Ninth Circuit in which the justices said that there was a case in which Mr. Justice Powell, I believe, concurred with a four-member plurality and on different grounds, but concurred with it, and therefore, Mr. Justice Powell was the judge who wrote the law of that case. And so that would be the middle, the middle, the concurring decision. You're probably more inclined toward Judge Alarcon's interpretation rather than A great man, Your Honor, a great decision, a great opinion. Well, he's a wonderful, wonderful colleague. We all agree. Well, the Court should listen to him. But what do we do with Judges Gould and Clifton, who separately I think you have to embrace Gould. He's the concurring judge. And he adopts an analysis of harmless error, and I think that's what the law of the case has to be. And remember, the law is that if a procedural violation is substantive enough to affect a right of the child or deprive the child of an educational opportunity, in this circuit, that is sudden death for a school district. Go no further. That's what the circuit has commanded in case and done, in case after case after case. So they're in the brief again. The ---- So you're claiming that Ms. Brandt should have been part of the team. She was at that time the special education teacher at Inner Mountain. Yes. And that the law says that there has to be a special education teacher of the child on the team. Is that a substantive requirement? Obviously, it's procedural, but is that a killer? In other words, if the team does not include that particular individual, does that settle the issue? It does. In your view? In my view, it is. And there are four cases I went through in the brief on this, that the Ninth Circuit has historically, right up to M.L., when it's found a breach of this magnitude, one that drives a stake through the heart of the act, as one case says, the court stops. But the hearing officer heard testimony from all of these individuals, including a special education teacher, didn't the hearing officer? No. Not who was there. It's too much of a breach. Not who wasn't there, but, I mean, but a special education teacher, correct? Or there were not even in front of the hearing officer? I don't believe so, Your Honor. No. I can't think of who it would have been. And she heard, the hearing officer heard testimony of what? Oh, it didn't matter. There's a statement in the district court decision that the hearing officer no, that the district said in its brief to the hearing officer, oh, but we told the IEP team what Ms. Brandt thought. The record refutes that. If you look at the IEP document, you see very little discussion of what was going on at Intermountain. And you see a lot of discussion of what the teachers in the district thought of this child historically and in the fifth grade. This procedural violation, all of the cases that you cite, don't they involve plaintiffs who actually eventually qualified for IDEA? Yes. And in this case, there was a finding that she did not qualify. Does that make a difference? I would concede it makes a difference ultimately, but I don't think it was a correct finding, and I'm hoping you will review it, De Novo, and so conclude. And was it procedural or was it substantive? Procedure becomes substantive at some point. They didn't have the right people there. They didn't have the right documents there. There's nothing in the record to show that this school district reviewed any of the Intermountain records, and the Intermountain records are significant. Well, what do you do in a case like this? If you have this problem, this procedural problem, what's the next step? Do you go back and do it over again or do you do something else? Well, I would hope, Your Honor, that we're going to get to the ultimate question of is this child eligible for special education as a child with emotional disturbance and if the court concludes she is, then it's easy, I think, because not only do you have a significant procedural violation, of course, I want you to stop there, but if you go on to the other. If you want us to stop there and do what? The child did not have a legal or a proper IEP meeting. If the court – I suppose that if the court were not going to go on to the substance, the court would have to remand it for a determinant for another IEP meeting, which would be conducted lawfully. I don't know what the status of RB is today, and some time has passed, obviously, but what else could the court do? Well, colleague, Mr. Tovasian and I debate this all the time. Well, gosh, what happens? What do you want? What you want, as I understand it, is reimbursement for the school and attorney's fees. Yes. That's what you want. Well, I suppose they could go back and consider that. But I hope this Court will consider it, because this was an unlawful IEP. The mother – Well, counsel, on that point, you mentioned earlier that you thought Judge Gould's concurrence should be followed, and as you may recall, he says, he writes separately to emphasize that we must assess the school district's error for harmlessness in accord with our precedent in target range, Amanda J. and Shapiro. You mentioned Shapiro earlier. By considering whether the procedural error resulted in a loss of educational opportunity or significantly restricted parental participation in the IEP formation, it certainly resulted in a loss of educational opportunity. This child did not have a lawfully constituted IEP team. He goes on to say, »'IDEA procedural error may be held harmless in appropriate cases, and this may include cases involving a mistake in how the IEP team was constituted.' I would suppose analytically that would have to be true if it didn't matter. But he's not talking there when they say deprive the child of an educational opportunity. He is not talking about a FAPE. He's not talking about eligibility. He's talking about a worthy IEP meeting that really looked at the – that was the case. The chances of that child in that case being in regular education classes were quite small, which is the reason I think you have the dissent. That's where he drew the line, Judge Clifton. And so there was a deprivation of educational opportunity. A straight-up honest, if I may use that word, IEP meeting. Roberts. Okay. Counsel, you're down to about three and three-quarter minutes. Do you want to reserve or? I shall, Your Honor. Thank you. You may do so. We'll hear from the school district. Good morning, Your Honors. May it please the Court, my name is Sally Jensen-Butcher. I'm representing Napa Valley Unified School District. With me this morning is my co-counsel, Scott Kivel. And also present in the gallery is Laura Miller-Ryan, who is representing my client as well. I'm prepared to address and respond to questions regarding the issue of the standard of review and the eligibility determination for special education, and we've allotted 15 minutes for that between my co-counsel and I. And my co-counsel is prepared to address the issues of the procedural questions that you were just addressing in the IEP. Given that we believe the pivotal issue is the eligibility question, we intend to go first. However, if you'd like to continue on the line of discussion or questions, co-counsel can proceed. No, that's fine. You can proceed. As this Court reiterated in its recent decision in Hood v. Encinitas Union School District, which was decided April 9th of 2007 and amended on May 11th, 2007, which we provided to the Court and to appellant attorneys as supplemental authority, this Court has determined that it uses the clear error standard to review the district court's finding of fact when they are based on a written record of a special education administrative hearing. Appellant is attempting to make it a de novo review, complete de novo review. And under Gregory K., that isn't appropriate. They say it's a the Court said it was a clear error standard that is reviewed de novo unless the issues are primarily factual. And in this case, the issues, unless the issues are a mixed question of law and fact and unless those questions are primarily factual. The issue in this case involves a question of a mixed question of law and fact as to whether the student was legally eligible to receive special education as a student with an emotional disturbance. The administrative record demonstrates that this is primarily a factual question, and thus this Court must review the district court's findings of fact for clear error. In that regard, the district court did what it was supposed to do under the IDEA. It received and independently reviewed an 8-volume administrative record. There was no additional evidence submitted to the district court as allowed by the IDEA, so it had the identical record to review as was presented by the hearing officer. And it reasonably concluded on the preponderance of the evidence that it supported the hearing officer's conclusion that Arby was not eligible for special education. And in so finding, they appropriately applied the proper, they appropriately exercised their discretion to apply the proper deference to the hearing officer and the school district's determination of educational policies that Arby was receiving an educational benefit in the general education program as the circuit, as this circuit has opined in Amanda v. Clark County, and citing the Board of Education v. Rowley, the Supreme Court's determination that for students already identified as eligible, it is the benefit standard to determine whether they're receiving a free and appropriate public education. The district court also determined that the hearing officer's 16-page decision based on six-plus days of hearing was thorough and careful, according to its prior precedent in Union School District v. Smith. This Court must also give the district court and hearing officer's findings of fact due weight when it reviews for clear error. This Court, in its recent decision in Hood, noted what type of and what level deference should be given, specifically, as the appellants in this case argue, for a hearing officer's decision, for a complete de novo review, the appellants in the Hood case also argued for de novo review. And the Court stated in footnote 4, although appellant argues for de novo review, the fact-intensive nature of a special education eligibility determination, coupled with the considerations of judicial economy, render a more deferential approach appropriate. Well, counsel, with respect to the hearing officer's decision, which he obviously credited some witnesses more than others, but he failed to discuss the testimony of several witnesses from the school that are to be attended during the 2002-2003 year, what do we do with that? Is that something we have to take another look at de novo, or do we look at the hearing as a whole? You would look at the hearing as a whole and give deference to the hearing officer's weight given to the testimony that was given at the hearing, as well as the district court's review of those findings, their independent review of those factual findings. And appellants make much of the different facts. They – this Court has before it the same record that the district court had. No additional evidence was provided. And what they seem to be doing is wanting to have this Court review the facts de novo and come to the conclusion that they want to come to, rather than give deference to the actual trier of fact who heard all of the evidence in context and determined for herself which evidence to give more weight to in coming to her conclusions, such as giving more weight to, for example, the school district psychologist's assessment of R.B. while she was at the Intermountain School in 2002-2003 than they would give to the school district psychologist's assessment of R.B. And I think that goes to the whole eligibility question and how much the hearing officer and the district court considered the evidence, those findings of fact, in applying it to the law of the eligibility criteria in Federal law, which is done de novo.  If the hearing officer considered the findings of fact and gave them deference, then he could apply – the Court could apply those facts, whether they found them in error or not, to the IDEA eligibility criteria for an emotional disturbance. And that is the issue that we think is pivotal in this case, is that the – whether R.B. is legally entitled to a publicly funded special education in a private residential setting as a student with emotional disturbance. The hearing officer and district court below found that R.B. did not exhibit any of the five characteristics in Federal law that a student must exhibit one or more over a long period of time to a marked degree that adversely affects her educational performance. It is our position that whether or not R.B. met one or any of the five characteristics of the disability as defined by law, that disability – because of that disability, if any, it did not require specialized instruction or services. Her educational needs were – could be met through the regular education program with modifications. Any emotional or behavioral disability that she may have had, which the district does not dispute that she had behavioral problems, she had emotional problems, but they did not adversely affect her educational performance. And R.B. was receiving educational benefit in the regular program. As this Court said in Hood, quoting, again, the Board of Education v. Rowley Supreme Court decision, it is appropriate for courts to determine if a child's classified as non-disabled is receiving adequate accommodations in the general classroom and thus is not entitled to special education services using the benefit standard, the same benefit standard that the Supreme Court used to determine if a already eligible disabled child was receiving an appropriate education in light of their progress toward achievement in the – or benefit in the general education curriculum. Are you saying that even though one of the characteristics may have been present, that in the long run it did not affect this child's ability or affect the child's education performance, because the child was able to get very well above average grades and score above average on a test. Is that correct? Absolutely. That is what we believe is the crux of the issue, is most eligibility criteria in Federal law are grounded in whether or not the child needs specialized instruction in order to achieve in the general education curriculum. At what level? According to the Supreme Court and the Board of Education v. Rowley, the benefit standard is that the student is receiving some benefit. They go on to say that it's not a maximizing the student's potential, and in the Court's terms it's in the – the nomenclature that's come about in the field is that the school district is not required to provide a Cadillac education. All they're required to provide is a serviceable Chevrolet of an education. And the general education curriculum, if a student is able to progress, evidenced by such things as good grades, progress from grade to grade, high standardized test scores, and in this case R.B. was on the average to a superior achievement in ability test results. And this type of evidence has consistently been used by the special education hearing officers in making eligibility determinations, is progress in the general education curriculum as evidenced by academic standards, such as grades and progress from grade to grade. Roberts, maybe this is a good time to hear from co-counsel. Your side still has your combined time. Thank you. Good morning. May it please the Court. I'd like to correct the factual statement that Appellant's counsel has made and also try and address Judge Gonzales' concern about the composition of the IEP team. First of all, we argue that the IEP team was properly constituted, and if the Court were to find a procedural error, that the proper review at that point would be Judge Gould's harmless error standard, which Judge Alicorn at footnote 9 of the MLK's acknowledged was the standard adopted by the panel in that case. And under the harmless error standard, and this is consistent with the Target case and with Shapiro as well, there needs to be a showing of some loss of educational opportunity. And in this case, there was no showing of lost opportunity. The student remained at the Intermountain Private School, number one. Number two, the hearing officer and the lower court both noted that the appellant had not offered any evidence that there was a lost educational opportunity. Now, in terms of the two factual errors in Appellant's opening statement, first of all, at the IEP, at the due process hearing, both the Intermountain teacher and the counselor, this would be Ms. Brand and Ms. Morrison, did testify at the hearing. And so that testimony was in front of the hearing officer. And I'd like to also like to point out that at the district court level, no new evidence was introduced by the appellant. The second factual error. The hearing officer didn't comment on their testimony. It wasn't included in the hearing officer's conclusion, was it? I mean, they may have testified, but there's nothing in the record that the hearing officer says that he gave any credence or any weight to their testimony. I don't believe in the 16-page or so decision that that was referenced. I think you're correct in that. The other factual misstatement was that there was no special education teacher at the IEP team on January 31st. The district had Ms. Miller, who is the district administrator for special education and who also is a special education teacher, and that's in the record. The teacher – I mean, the district also had the elementary school principal who, yes, was the elementary – was the kindergarten teacher for the student and who had – and this, again, is in the record – had had continuing contact with the student, keeping in mind that the student should have been in middle school at that point in time, and so therefore there was no current regular education teacher that could be brought in. And also at the IEP team meeting, there were two psychologists, Ms. Sturvin, who actually had made a site visit in December to Intermountain and brought back information from that school and those staff members, and also Ms. Ponzito, who is the district – I mean, is the school psychologist for that elementary school. You know, we would argue that the appellant would have a closer case if they were relying on the pre-1997 IDEA, which, as Judge Alarcon indicated in ML, required – explicitly required the current regular education teacher of the student to be included in the IEP. But the revision of the IDEA in 1997 broadened the scope of the application and broadened the scope of who could be included in terms of a regular or special education teacher and also provided for some discretion to include other people who would have knowledge that would be helpful in determining the eligibility or the special needs of the student. But that is not the case here. It's the 1997 revised IDEA that is at issue. I'd be happy to respond to any questions that Anna might have. What do you think we should do if we should find that it was a procedural violation and that they failed to include the current special education teacher? And then what? Well, first of all, I don't think it's clear in the record why somebody from Intermountain was not at the IEP. So it's all speculation. I would argue that if you do find that the absence of the Intermountain staff member at the IEP in January 2003 was a procedural error, then I would suggest that you turn to the harmless error standard employed by Judge Clifton and Judge Gould in the ML case and that you consider in your analysis both the hearing officer and Judge Zimmerman's conclusions that no evidence had been introduced, no specific evidence had been introduced showing any demonstrated lost educational opportunity. And that nexus to a lost educational opportunity I believe is required by the Ninth Circuit series of cases from, you know, Target and Shapiro to ML and so on. Anything further on that issue? Apparently not. Thank you. Anything further from your side? You have about three minutes left, but you don't have to use them. I will take two minutes. All right. I would submit that the Court's recent decision in Hood verified or validated the use of academic measures to determine educational performance in the context of eligibility for special education. And that the Court not adopt the broader view of adversely affect educational performance as the appellants cite in their briefs, referring to cases from outside of this circuit, such as the Corsado case in New York. And I would submit that the Hood case also addressed that, saying that, first, it's misapplied in this circuit in light of the Hood decision. And secondly, because it – those cases actually did use academic performance as – academic measures as one measure of educational performance in addition to a broader perspective. Finally, there is no credible evidence before the district court or the hearing officer that they clearly erred in their findings and the district court's decisions should stand. Thank you. Thank you, counsel. Mr. Crook, you have some reserve time. What I think the Court should do is the following. I think there's a clear procedural violation, and I think that that deprives the child of a FAPE in and of itself. If the Court is not comfortable with that, well, at the very least, in a hermetically sealed opinion in which issues are originally segregated, that would mean sending it back to this school district to get it right, to have the right IEP meeting and to decide whether they're going to reimburse this family for Intermountain. For judicial economy's sake, and I'm the apostle of the sudden death rule that was standing here banging the podium, but I wonder how much sense that would make if the Court were also inclined to believe that on the merits, substantively speaking, this was a deprivation of educational benefit and the child was eligible. And I want to address that in the few seconds I have. Grades are ñ education is not merely grades. It also includes going to school. It includes being there. This child was sent away from school, kept at home for four to six weeks. She would ñ Mr. Silvera testified that, you know, she really didn't like to read much. And during a silent reading time, so he'd send her off to tutor other kids, third graders. She wasn't, therefore, in his class during that time. Her ñ Most of the problems occurred the first part of the fifth grade. By the second part of the fifth grade, things were really much more ñ No, they weren't. ñ under control. No. Reread the briefs, Your Honor. They really weren't. It was a constant problem. And to say that, well, she was getting good grades all along, therefore, there was no problem. Here's a ñ education in any meaningful sense includes the inculcation of, in each pupil, of the necessity of rules and obedience thereto. This understanding is no less important than learning to read or write. Justice Powell in Goss v. Lopez, 419 U.S. 565 and 592-93. In Beth-El School District v. Fraser, 478 U.S. 675. Public school education must prepare students for citizenship in the republic. It must inculcate the habits and manners of civility. This child's education was most afflicted, most weakened by her disabilities, which are horrid. And everybody would agree to that when you read about them. I mean, how can ñ but she was constantly not there. This wasn't an episodic problem. It was an episodic non-problem. The hearing officer saw this glass as, what, half ñ I don't know which the metaphor would be, half empty or half full. It was an episodic situation where she wasn't having problems. Where does this come from, that a kid who was in trouble from the time she was in preschool, who was thrown out of preschools, who was hauled away by the police in the second grade and the fifth grade, who was suspended repeatedly, who was absent, et cetera, that this isn't anything other than an episodic situation? It is a consistent problem throughout her educational life. And in the record are the notes from Intermountain that really go into that. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And the last case for today will be United States v. Prieto.
judges: Hall, O'scannlain, Gonzalez